IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

EMETERIO H. SIMON, *et al.*,

Plaintiffs,

v.

PNC BANK, NATIONAL ASSOCIATION, *et al.*,

Defendants.

Civil No. 2:16-cv-388

## MEMORANDUM OPINION AND ORDER

Like too many homeowners affected by the great recession, Plaintiffs Emeterio Simon and Diana Simon ("the Homeowners" or "the Simons") fell behind on their mortgage payments. As a result, Defendant PNC Bank National Association ("the Lender") foreclosed on their Virginia Beach home in 2013. The Simons have remained in the home while the parties to this case have litigated the foreclosure's legality in the state and federal courts. This suit is the latest iteration of that ongoing legal dispute.

The Simons seek to rescind the foreclosure sale based on the Lender's alleged breaches of its obligations to provide notice before foreclosing on the property and to comply with applicable law throughout the foreclosure process. At this juncture, the Defendants—various parties to the loan and foreclosure—have moved to dismiss the Amended Complaint. Because the Homeowners have failed to allege facts establishing that the foreclosure was illegal, the motions to dismiss are granted.

I. BACKGROUND

When ruling on a motion to dismiss for failure to state a claim, courts accept a complaint's well-pled factual allegations as true, and draw any reasonable inferences in favor of the plaintiff. *See Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012). Accordingly, the Court recites the facts as alleged by Plaintiff. *See* Am. Compl. (ECF No. 27).

A. <u>The Loan</u>

In 2006, the Simons obtained a $317,200 loan, provided by the Lender and partially guaranteed by Defendant Federal Home Loan Mortgage Corporation ("the Backer").[1] *See* Am. Compl. ¶¶ 8, 22. To secure the loan, the Simons used their Virginia Beach home as collateral. *See id.* They executed a promissory note ("the Note") reflecting this encumbrance on the property and the corresponding debt. *See id.* ¶¶ 8, 12. To further secure this arrangement, the Simons placed the title to their home in trust. *See id.* ¶ 8. The terms of that trust were set forth in an agreement among the parties, the "Deed of Trust."[2] *See* Deed of Trust (ECF No. 27-1). This arrangement is known commonly as a mortgage.

The Deed of Trust provided that if the Homeowners defaulted on the loan by failing to make monthly payments Defendant Samuel I. White P.C. ("the Trustee")[3] could foreclose, at the Lender's behest. *See* Am. Compl. ¶ 10, 65. Before selling the home, the Trustee was required to ensure that the Lender had fulfilled certain conditions. *See id.* Two of these conditions included providing adequate notice of the default and complying with applicable law. *See id.* ¶¶ 9, 66.

---

[1] Originally, the Note was executed in favor of National City Bank, but it was assigned subsequently to PNC—the current Note holder. *See* Am. Compl. ¶¶ 8, 11.

[2] As noted, the loan was backed by the Federal Home Loan Mortgage Corporation—commonly known as Freddie Mac. Both the Note and the Deed of Trust are state-specific form instruments, provided by Freddie Mac and required for all loans it backs. *See Uniform Notes and Note Addenda*, FREDDIE MAC, http://www.freddiemac.com/uniform/unifnotes.html (last accessed Aug. 24, 2017); *see also Uniform Security Instruments*, FREDDIE MAC, http://www.freddiemac.com/uniform/unifsecurity.html (last accessed Aug. 24, 2017).

[3] Samuel I. White, PC was appointed as substitute trustee and tasked with foreclosing on the home. *See* Am. Compl ¶ 22. For ease of reference, he is referred to as "the Trustee."

### 1. The Notice Requirement

Both the Note and the Deed of Trust contained clauses governing how the Lender would notify the Simons if they were in default. *See id.* ¶¶ 9, 10. The Note's notice of default provision, Paragraph 6(c) provided in pertinent part:

> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

*Id.* ¶ 9. The Deed of Trust's notice of default provision, Paragraph 22, provided in pertinent part:

> Lender shall give notice to Borrower . . . following Borrower's breach of any covenant or agreement in this Security Instrument . . . .
>
> The notice shall specify (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date of notice is given to the Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.

*Id.* ¶ 10; *see also* Deed of Trust ¶ 22. If the thirty-day deadline for curing the default elapsed without payment, the Deed of Trust entitled to Lender to invoke its power to sell the home. *See id.* ¶ 65.

### 2. The "Applicable Law" Requirement

The Deed of Trust also required that the foreclosure comply with applicable law. *See id.* ¶ 66. Specifically, Paragraph 16 stated that "[a]ll rights . . . contained in this Security Instrument are subject to any requirements and limitations of Applicable Law." Deed of Trust ¶ 16. In its "Definitions" section, the Deed of Trust defined "Applicable Law" as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." *Id.* at 3.

B.  **The Default**

In early 2012, the Homeowners began missing mortgage payments. *See* Am. Compl. ¶ 13. The Lender responded by sending them a notice of default, dated July 23, 2012 ("the Notice of Default" or "the Notice"). *See* Notice at 1 (ECF No. 27-2). That letter informed the Simons of their default and stated that they were required to pay $3,534.15 by August 22, to avoid acceleration of their payments and foreclosure under the Deed of Trust. *See id.* ¶¶ 14-15.

The listed sum included the amount past due on the Simons' mortgage and a future installment payment that was not yet due, but would be due on August 1, before the specified payment date. *See id.* ¶¶ 13-14. The Notice of Default advised the Homeowners of this fact. *See* Notice at 1 ("This amount includes the 8/1/2012 payment and applicable late charges, property inspection fees and non-sufficient funds fees.").

Although not pled, the Simons' failure to cure the outstanding arrearage at that time or afterwards appears undisputed. On May 13, 2013, they sought to resolve their default by applying for a loan modification from the Lender. *See* Am. Compl. at ¶ 73.

C.  **The Foreclosure Sale**

On May 29, 2013, the Trustee, acting on behalf of the Lender, sold the Simons' home at a foreclosure auction. *See id.* ¶¶ 22-23, 29. The Simons allege that the Lender did not issue a written response to their loan-modification application before the sale. *See id.* at ¶ 74.

The winning bid of $253,623 was submitted by the Lender itself, but subsequently was assigned to the Backer, who had guaranteed the loan. *See id.* ¶¶ 31-32, 38-39. The Trustee then executed a trustee's deed conveying the property to the Backer. *See id.* ¶ 40.

Shortly thereafter, the Backer filed an unlawful detainer summons in Virginia Beach General District Court, which entered an order awarding possession to the Backer. *See id.* ¶ 44-

45. The legal wrangling continued for some time in state court, and appears to remain ongoing today. *See id.* ¶¶ 47-56.

### D. Proceedings Before This Court

The Simons have filed this suit, challenging the foreclosure and seeking to rescind the sale of their home. All Defendants have moved to dismiss the Amended Complaint. *See* Lender's Mot. & Mem. (ECF Nos. 28, 29); *see also* Trustee's Mot. & Mem. (ECF Nos. 30, 31); Pls.' Lender Opp. (ECF No. 34); Pls.' Trustee Opp. (ECF No. 35). The Court deferred resolution of these motions pending supplemental briefing from the Lender and the Homeowners.[4] *See* Supp. Brief Min. Order (ECF No. 39). Both have submitted supplemental briefs, and the motions are now ripe for resolution by the Court. *See* Lender's Supp. Brief (ECF No. 41); *see also* Pl.'s Supp. Brief (ECF No. 42).

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. "To survive a Rule 12(b)(6) motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face.'" *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Facts that are 'merely consistent with' liability do not establish a plausible claim to relief." *Takeda Pharm.*, 707 F.3d

---

[4] Specifically, the Court's Order asked: "(1) to what extent does the Virginia Supreme Court's decision in *Parrish v. Fed. Nat'l Mortg. Ass'n*, 787 S.E.2d 116 (Va. 2016) apply to this case in light of the Erie doctrine's requirement that federal courts resolve questions of state law by determining how the state's highest court would decide the issue? (2) Under the Erie doctrine, is the Deed of Trust phrase 'federal administrative rules with the force of law,' interpreted under state law, federal law, or some combination of state and federal law?" Min. Order (ECF No. 39).

at 455. Rather, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level,' thereby 'nudg[ing] [plaintiff's] claims across the line from conceivable to plausible.'" *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (first and second alteration in original).

At this stage, "(1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader." 5B CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1357 & n.11 (3d ed.) (collecting cases); *accord Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012). However, courts "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments.'" *Takeda Pharm.*, 707 F.3d at 455 (quoting *Wag More Dogs*, 680 F.3d at 365).

## III. ANALYSIS

Because the claims against the Trustee and the Backer are derivative of the claims against the Lender, they present the same core issue—whether the foreclosure sale was lawful. Therefore, the Court addresses the merits of the pending motions to dismiss jointly.[5]

The Simons do not dispute that they defaulted on their mortgage. However, they allege that their home's 2013 sale is void or voidable because the preceding foreclosure was unlawful in two ways. First, they allege that the Lender failed to fulfill its obligation to provide sufficient notice when instituting the foreclosure proceedings, as required by the Note and Deed of Trust.

---

[5] The Trustee also raises a novel argument against the Simons' claims, contending that "'the availability of post-foreclosure rescission under Virginia law is questionable at best.'" Trustee's Mem. at 6 (ECF No. 41). In support of this argument, the Trustee quotes and extensively cites *Khan v. Commonwealth Trs., LLC*, No. 1:14cv00870, 2014 WL 7640363 (E.D. Va. 2014). Despite the fact that the Trustee has styled this as a case citation, suggesting that this "authority" is an opinion of this Court supporting the Trustee's position, the document is merely a brief filed by the lender seeking dismissal of that case. *See* Def.'s Dismissal Mem. at 13 n.8, *Khan v. Commonwealth Trs., LLC*, No. 1:14cv0087 (E.D. Va. July 18, 2014). The overt dishonesty of this practice along with other troubling briefing practices that arose in this matter, will be dealt with in a separately issued Order to Show Cause.

Second, they allege that the Lender failed to comply with the Deed of Trust's requirement that the foreclosure comply with "applicable law," specifically federal administrative rules and orders that have the effect of law. Because the Homeowners' claims rely on infirm legal theories, they have failed to state any claim for relief. Accordingly, their suit must be dismissed.

Under Virginia law, "'[a] trustee's power to foreclose is conferred by the deed of trust. That power does not accrue until its conditions precedent have been fulfilled. The fact that a borrower is in arrears does not allow the trustee to circumvent the conditions precedent.'" *Squire v. Va. Hous. Dev. Auth.*, 758 S.E.2d 55, 60 (Va. 2014) (quoting *Mathews v. PHH Mortgage Corp.*, 724 S.E.2d 196, 199 (Va. 2012)). "A deed of trust is construed as a contract . . . and [Virginia courts] 'consider the words of a contract within the four corners of the instrument itself.'" *Squire*, 758 S.E.2d at 60 (quoting *Mathews*, 724 S.E.2d at 200-01). "The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Squire*, 758 S.E.2d at 60 (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)).

### A. <u>The Lender's Alleged Breach of the Deed of Trust's Requirement to Provide Notice of Default Before Foreclosing</u>

The Homeowners first allege that the Notice of Default stated the amount necessary to cure the default inaccurately, rendering the Notice a nullity and the foreclosure illegal. *See* Am. Compl. ¶¶ 13-12. The July 23, 2012 Notice informed the Simons that to cure their default they were required to pay $3,534.15 by August 22. They contend that this improperly included an upcoming August 1 installment payment—an amount not yet overdue. *See* Am. Compl. ¶¶ 14, 16, 17. The Simons observe that they could have avoided imminent foreclosure by paying the overdue amount and forgoing the August 1 payment. *See id.* ¶¶ 15-21. This would have cured

the existing default while creating another, entitling them to another Notice of Default regarding the missed August 1 payment. *See id.* ¶¶ 15-21. The issue before the Court is whether the Lender breached its notice obligations, thereby rendering the foreclosure sale illegal.

The United States Court of Appeals for the Fourth Circuit recently considered a dispute involving similar notice of default language. *Whala v. PNC Bank Nat'l Ass'n*, 642 F. App'x 221, 221-23 (4th Cir. Mar. 22, 2016). The Fourth Circuit rejected the plaintiffs' claims, explaining that:

> This notice made clear that, because the [plaintiffs] had until June 3, 2010, to cure the default—a date that fell beyond the due date for the June 1 installment—the amount required to cure as of June 3 would also have to include the June 1 installment. Any reasonable person would also conclude that, if the [plaintiffs] had chosen to cure before June 1, 2010, they could have simply withheld the June 1 installment until June 1 and made that payment then. Accordingly, we conclude that PNC Bank did not, as alleged, breach the loan documents—the note and the deed of trust.

*Id.* at 223 (citation omitted). This unpublished opinion—although not binding—is persuasive authority.

Here, as in *Whala*, the Notice of Default informed the Homeowners correctly that they needed to pay $3,534.15 by August 22, 2017, thirty days from the notice date, to bring their loan current. This correctly stated the amount due by the payment date. Therefore, the Simons fail to allege facts constituting a breach, and fail to state a claim for breach of the Deed of Trust. *See Squire*, 758 S.E.2d at 60 (listing duty, breach, and damages as the elements of a breach of contract under Virginia law).

### B. The Lender's Alleged Breaches of the Deed of Trust's Requirement That It Comply with "Applicable Law" When Foreclosing

The Simons also allege that they are entitled to rescission based on the Lender's alleged failure to comply with federal law when foreclosing on the property, as required by the Deed of Trust. Specifically, they challenge the Lender's alleged failure to comply both with federal rules

implementing the Housing Affordability Modification Program ("HAMP"), and with an April 13, 2011 Consent Order between the Lender and the Treasury Department. *See* Am. Compl. ¶¶ 68-79. This issue is decidedly more complex.

### 1. Whether Later-Enacted Federal Administrative Rules Constitute Applicable Law

Both the federal rules and the Consent Order post-date the Simons' deed of trust, but pre-date the foreclosure. This Court's cases applying Virginia law have held consistently that a deed of trust provision requiring the lender to comply with "applicable law" when foreclosing on a property provision does not incorporate later promulgated federal regulations.[6] However, the Virginia Supreme Court has held recently that allegations that a foreclosure violated federal regulations promulgated after a deed of trust's execution were sufficient to state a claim.[7] These federal and state holdings are in conflict.

Under the Erie doctrine, which imposes a constitutionally mandated limit on this Court's powers, federal courts are bound to faithfully apply state substantive law where it governs. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *see also Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965).[8] This requires federal courts "to apply the operative state law as would the highest court of the state." *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992). "The best evidence to this effect would be, of course, a decision by the [state's] highest court . . . which addresses the [pertinent legal] issues." *Id.* Therefore, this Court first looks to the Virginia

---

[6] *See, e.g., Reamer v. Deutsche Bank Nat'l Tr. Am.*, No. 3:15cv00601, 2016 WL 1259557, at *5 (E.D. Va. Mar. 28, 2016); *Simon v. PNC Bank Nat'l Ass'n*, No. 2:14cv523, 2015 WL 1802659 (Apr. 16, 2015); *Condel v. Bank of Am., N.A.*, No. 3:12cv212, 2012 WL 2673167, at *6-8 (E.D. Va. July 5, 2012).

[7] *See, e.g., Parrish v. Fed. Nat'l Mortg. Ass'n*, 787 S.E.2d 116, 123 (Va. 2016) (holding that these facts state a claim sufficient to overcome a demurrer); *Newport News Shipbuilding Emp. Credit Union v. Busch*, Record No. 150678 (Va. June 16, 2016) (unpublished); *see also Squire*, 758 S.E.2d at 59 (explaining that when ruling on demurrer Virginia courts must "determine whether the factual allegations pled and the reasonable inferences drawn therefrom are sufficient to state a cause of action.").

[8] In *Hanna v. Plumer* the Supreme Court explained that "[w]e are reminded by the *Erie* opinion that neither Congress nor the federal courts can, under the guise of formulating rules of decisions for federal courts, fashion rules which are not supported by a grant of federal authority contained in Article 1 or some other section of the Constitution; in such areas state law must govern because there can be no other law." 380 U.S. at 471-72.

Supreme Court's binding constructions of Virginia law. *Wells v. Liddy*, 186 F.3d 505, 527 (4th Cir. 1999).

The Erie doctrine requires that questions of state law be resolved not only as the state's supreme court *has*, but also *as that court would today*. *See id.* at 527-28. In absence of an on-point state high court decision, federal courts do not have carte blanche to craft state substantive law when the law is unclear. *See Triangle Indus., Inc.*, 957 F.2d at 1156. Rather, courts "must make an Erie guess and determine as best [they] can what the [state's high court] would decide." *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 611 (5th Cir. 2016); *accord Wells*, 186 F.3d at 527-28. "To forecast [the] decision of the state's highest court," federal courts consider circumstantial evidence, including "*inter alia*: canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions." *Wells*, 186 F.3d at 528.[9]

The question before the Court is how, not whether, *Parrish v. Fed. Nat'l Mortg. Ass'n*, 787 S.E.2d 116 (Va. 2016) impacts the Court's prior "Erie guess" on this issue. The Lender declined to undertake the required Erie analysis to show the effect of *Parrish* on previous federal cases. *See* Lender's Supp. Br. at 1-8. Instead, it argued that the Simons' proposed reading of *Parrish* expands the ruling "beyond the four corners of the opinion." *Id.* at 5. This Court knows of no canon suggesting that Virginia Supreme Court opinions should be read only within their four corners, and, tellingly, the Lender cited no precedent in support of that proposition. *See id.*

---

[9] This is a well-established rule of federal law. *E.g., Wolfe v. Allstate Property & Cas. Ins. Co.*, 790 F.3d 487, 492 (3d Cir. 2015); *Avakian v. Citibank, N.A.*, 773 F.3d 647 (5th Cir. 2014); *Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244, 254 n.10 (4th Cir. 2012); *Triangle Indus., Inc.*, 957 F.2d at 1156; *Sherby v. Weather Bros. Transfer Co.*, 421 F.2d 1243, 1244 (4th Cir. 1970); *Integrated Direct Mktg., LLC v. May*, 143 F. Supp. 3d 418, 421 (E.D. Va. 2015); *Blanch v. Chubb & Sons, Inc.*, 124 F. Supp. 3d 622, 630-34 (D. Md. 2015); 19 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 4507 & n.50 (3d ed.); RICHARD H. FALLON ET AL., HART AND WECHSLER'S FEDERAL COURTS AND THE FEDERAL SYSTEM 597 (7th ed. 2015).

The Lender also asserted that *Parrish* is distinguishable from this case, and deals with the instant issue only indirectly. These observations are accurate, but not determinative. Even if *Parrish* does not constitute direct evidence of the Virginia Supreme Court's opinion on the issue, it is circumstantial evidence of how that court would hold. When the Virginia Supreme Court speaks on an issue only indirectly, federal courts are not free to ignore it. *See Sherby*, 421 F.2d at 1244. Therefore, this Court is *required* to consider *Parrish* when resolving the instant question of state law, despite the Lender's bald contention that it has "no application to this case." Lender's Supp. Br. at 1.

Although *Parrish* clearly impacts the required Erie analysis, the scope of that impact still must be ascertained. When considering an unresolved issue of state law, a federal judge need not act as a "ventriloquist's dummy" for state decisions of questionable controlling and probative force. 20 CHARLES A. WRIGHT & MARY KAY KANE, FEDERAL PRACTICE DESKBOOK § 61 (2d ed.). "Instead he or she is free, just as state judges are, to consider all the data the highest court of the state would use in an effort to determine how the highest court of the state would decide." *Id.* Here, consideration of available "data" fails to readily resolve the issue.

As explained above, "[a] deed of trust is construed as a contract . . . and [Virginia courts] 'consider the words of a contract within the four corners of the instrument itself.'" *Squire*, 758 S.E.2d at 60 (quoting *Mathews*, 724 S.E.2d at 200-01). However, when interpreting deeds of trust, the Virginia Supreme Court has applied contract doctrine flexibly where rote application would "defy common sense." *Matthews*, 724 S.E.2d at 200.

Ordinarily "contractual rights and duties are controlled by the law in effect at the time the contract was executed." *Gazale v. Gazale*, 250 S.E.2d 365, 366 (Va. 1979). This rule makes sense when incorporating future changes in the law would impose additional unforeseen

obligations on a party to the agreement. *See Gazale*, 250 S.E.2d at 366 (holding that when a contract provides for payments until a child reaches "the age of majority" subsequent increases in the age of majority would not be incorporated into the contract to extend the obligation); *see also* 11 WILLISTON ON CONTRACTS § 30:2 (4th ed.).

However, freezing a deed of trust's applicable law requirements at the time of execution results in a rule that defies common sense. Under this rule, a foreclosure in 2017 could be governed by the regulations in place in 1987; and a foreclosure in 2047 could be governed by regulations in place today that are abandoned, clarified, or supplemented in the future. This would require real estate attorneys to achieve outdated editions of the Code of Federal Regulations, to be prepared to determine the applicable procedures when instituting or defending against a foreclosure.

In addition, this rule makes little sense in context because the incorporated foreclosure regulations already govern lenders' conduct, independent of any duties imposed by agreement. *See Mathews*, 724 S.E.2d at 201-02 (emphasizing that only regulations requiring a lender to act before foreclosing are incorporated into a deed of trust). When instituting a foreclosure, a lender must comply with the rules in effect at that time; otherwise, the lender risks being penalized by federal regulators. Therefore, incorporating prospective changes does not impose additional obligations on lenders—it harmonizes lenders' existing obligations to both federal regulators and homeowners. Alternatively, freezing applicable law at the time of execution would subject each foreclosure to two sets of regulations, potentially exposing lenders to inconsistent obligations.

Without additional information, the Court is reluctant to guess at how the Virginia Supreme Court might resolve these policy issues, and the *Parrish* decision is of limited probative

force as circumstantial evidence of how the Virginia Supreme Court would rule. As another Court in this District explained recently:

> [T]he Virginia Supreme Court in *Parrish* was primarily focused on a discrete issue of civil procedure. Its ultimate ruling had nothing to do with [the substance of the federal regulation at issue], but instead centered on the subject matter jurisdiction of the Commonwealth's general district courts . . . . To emphasize this point, *Parrish* was not a contractual dispute at all; it was instead a statutory unlawful detainer action . . . . Moreover, the opinion in *Parrish* did not directly confront the issue of whether the deed of trust had properly incorporated future regulations. Indeed, the Court does not mention the execution date of the deed of trust in its entire opinion.

*Combs v. U.S. Bank Nat'l Ass'n*, No. 1:17-cv-545, 2017 WL 2805494, at *5 (E.D. Va. June 28, 2017).[10] Because of this lingering uncertainty, the weighty state interests involved, and in the wake of counsel's insufficient briefing, the Court declines to resolve the issue of what year's regulations are incorporated into a deed of trust at this time.

### 2. Whether the Deed of Trust's Incorporation of Applicable Law Required the Lender to Comply with the Consent Order

The Simons allege that an April 2011 Consent Order between the Lender and the Office of the Comptroller of Currency is incorporated into the Deed of Trust as applicable law. *See* Am. Compl. ¶¶ 68-72. They allege that this federal administrative order prohibited the Lender from foreclosing on any borrower with a pending loan modification application. *See id.* ¶¶ 69, 72. The Court need not accept the Simons' allegations regarding the substance and legal effect of this Consent Order's terms. *See Takeda Pharm.*, 707 F.3d at 455. The Lender could not have breached the Consent Order in the course of the foreclosure because, by its very terms, that document does not govern foreclosure procedures.

Because the parties offered contradictory descriptions, the Court reviewed the Consent Order. "In reviewing a Rule 12(b)(6) dismissal, [courts] may properly [consider] matters of

---

[10] The Court in *Combs* did not consider the Erie issues presented by this conflict because the parties did not brief the issue and that Court did not otherwise raise it.

public record." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986)) ("Although this case comes to us on a motion to dismiss . . . we are not precluded in our review of the complaint from taking notice of items in the public record."). Unlike contracts among private parties, the Consent Order is a federal administrative order, which constitutes a public record. *See* Consent Order at 3 (stating that the order is issued pursuant to 12 U.S.C. § 1818(b)); *see also* 12 U.S.C. § § 1818(b) (authorizing federal banking agencies to issue orders resolving investigations of federally insured depository institutions and governing such orders).

The Consent Order requires the Lender to create and submit a plan for handling its pre-foreclosure activities. *See* Consent Order at 20-21, *In the Matter of PNC Bank, N.A.*, AA-EC-11-17 (OCC Apr. 13, 2011). The Consent Order itself imposes no requirements on those pre-foreclosure activities. *See id.* No obligations to the Homeowners can be derived from the Order, and it is not applicable law. *Cf. Mathews*, 724 S.E.2d at 201-02 (emphasizing that only regulations requiring a lender to act before foreclosing are incorporated into a deed of trust). Therefore, the Simons fail to allege a cognizable duty to comply with the Consent Order, and fail to state a claim for breach of the Deed of Trust. *See Squire*, 758 S.E.2d at 60 (listing duty, breach, and damages as the elements of a breach of contract under Virginia law).

### 3. Whether the Deed of Trust's Incorporation of Federal Administrative Rules with the Effect of Law Required the Lender to Comply with Interpretive Rules

The Homeowners also argue that the Deed of Trust incorporated a federal administrative rule prohibiting "dual track foreclosures," which occur while a loan modification is pending. *See* Am. Compl. ¶¶ 75-76. [11] The Homeowners contend that the Lender's dual-track foreclosure

---

[11] Despite alleging that the Lender violated this prohibition, the Amended Complaint fails to identify the particular rule allegedly violated. The Simons need not plead the law—only facts, so this omission is not fatal to

violated a Treasury Department guidance document known as Supplemental Directive 09-10. *See* Pls.' Lender Opp. at 15-17. The Deed of Trust incorporates only those federal administrative rules and orders that have the effect of law. Because Supplemental Directive 09-10 lacks the effect of law, it is not incorporated into the Deed of Trust as applicable law and imposed no duty on the Lender.

### a. Whether Federal Laws Lacking a Private Right of Action Are Incorporated into the Deed of Trust

The Virginia Supreme Court has already determined that although HAMP regulations lack private rights of action, their violation can support a breach-of-contract action under Virginia law. *See Mathews v. PHH Mortgage Corp.*, 724 S.E.2d 196, 198, 202 (Va. 2012).

The *Mathews* Court explained that although "[t]he regulations themselves govern the relationship between the lender and the government; there is no reason to refer to them in [a] deed of trust other than to affect the duties of the parties to it." *Mathews*, 724 S.E.2d at 202. Therefore, a clause requiring that the lender comply with applicable law "makes [federal] regulations enforceable by borrowers as conditions precedent to acceleration and foreclosure as through a state-law action for breach of contract." *Id.*[12]

This Court is not free to re-visit the Virginia Supreme Court's binding construction of Virginia contract law. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983) (per curiam) (holding

---

their claim. *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014) ("Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

[12] *See also Covarrubias v. CitiMortgage, Inc.*, 623 F. App'x 592, 593 (4th Cir. 2015) (applying a regulation that lacks a private right of action as an enforceable deed-of-trust condition); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581-82 (7th Cir. 2012) (holding that, the "absence of a private right of action from [the HAMP rules] provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element" of the HAMP rule); *Condel v. Bank of America, N.A.*, 3:12cv212-HEH, 2012 WL 2673167, at *6-8 (E.D. Va. July 5, 2012) (holding that *Mathews* forecloses the no-private-right-of-action argument). *But see Reamer v. Deutsche Bank Nat'l Tr. Co. Ams.*, 3:15cv601-HEH, 2016 WL 1259557 (E.D. Va. March 28, 2016) (holding that regulations lacking a private right of action are not incorporated into a Deed of Trust, without mentioning *Mathews*).

that "the views of the State's highest court with respect to state law are binding on the federal courts").

### b. Whether Federal Agencies' Interpretive Rules Are Incorporated into a Deed of Trust

The legal effect of a particular federal administrative rule is determined by federal law. *See Mathews* 724 S.E. 2d at 204-205; *see also Chen Zhou Chai v. Carroll*, 48 F.3d 1331, 1340 (4th Cir. 1995). Not all such rules carry the effect of law. *See Chen Zhou Chai*, 48 F.3d at 1340. To promulgate a rule with the effect of law, federal administrative agencies generally must act pursuant to authority delegated by Congress and employ the notice and comment procedures specified by the Administrative Procedure Act. *Id.* (citing *Am. Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1109 (D.C. Cir. 1993)). This produces a so-called "legislative rule," which by definition has the effect of law. *See id.*

Alternatively, "interpretive rules" and other guidance documents are crafted without notice and comment rulemaking procedures. *Id.* at 1340-41. Interpretive rules lack the effect of law, and "simply state what the administrative agency thinks a statute means." *Id.* "[I]nterpretive rules are not binding on courts or on members of the public . . . [a] court may choose to give binding effect to the position taken by an agency in an interpretive rule, but it is the court that provides the binding effect of law." 1 RICHARD J. PIERCE, JR. ADMINISTRATIVE LAW TREATISE § 6.4 at 432-33 (5th ed. 2010).

At most, Supplemental Directive No. 09-01 is an interpretive rule, lacking the effect of law. The document is limited to providing mortgage servicers with additional guidance on their existing obligations for participating in HAMP, and was not subject to notice and comment procedures. Supp. Directive No. 09-01, at 1-2. Moreover, this particular directive applied only to "mortgage loans that are not . . . guaranteed by . . . Freddie Mac." *Id.* The Simons' loan was

guaranteed by Freddie Mac. *See* Am. Compl ¶ 35. Because the cited rules lacked the effect of law and, in any event, are inapplicable to the Simon's loan, Supplemental Directive No. 09-01 fails to qualify as "applicable law" incorporated into the Deed of Trust.[13]

Therefore, the Simons fail to allege either duty or breach under this theory, and fail to state a claim for breach of the Deed of Trust. *See Squire*, 758 S.E.2d at 60 (listing duty, breach, and damages as the elements of a breach of contract under Virginia law).

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motions to Dismiss (ECF Nos. 28, 30) are **GRANTED**. By separate Order, Defendants' counsel will be ordered to show cause why sanctions should not be imposed.

The Clerk is **REQUESTED** to forward copies of this Memorandum Opinion and Order to all counsel.

**IT IS SO ORDERED.**

/s/ Arenda L. Wright Allen
United States District Judge

August 28, 2017
Norfolk, Virginia

---

[13] Currently, a similar restriction is found in a federal regulation that constitutes a legislative rule carrying the force of law. *See* Loss Mitigation Procedures Rule, 12 C.F.R. § 1024.41(g) (2016). However, the Loss Mitigation Procedures Rule took effect on January 10, 2014—over seven months after the foreclosure on the Simon's home. *See* CFPB Mortgage Servicing Rules (Regulation X), 78 Fed. Reg. 10,696, 10,842 (Feb. 14, 2013); *see also* Am. Compl. ¶ 74. Therefore, the Loss Mitigation Procedures Rule was not in effect either when the Deed of Trust was executed or when the foreclosure took place and did not regulate the Lender's conduct in this case.